IN THE UNITED STATES DISTRICT COURT
FOR THE
EASTERN DISTRICT OF NEW YORK

CECIL O. HARVEY a.k.a. David Grant

-V-

New York City Department of Corrections
Rikers Island; Warden John Doe Otis
Bantum Correction Center; Warden John Doe
N.I.C. West Facility; Warden John Doe
G.M.D.C. C-73; Warden Riorden A.M.K.C. C-95
(Defendants)

Civil Complaint Pursuant
to 42 U.S.C. 1983

## Jurisdiction

This court has jurisdiction because the incident which gave rise to this complaint occured within the counties over which this court exercises its jurisdiction which are Queens and Borrklyn. The Rikers Island Correction Facility is located at East Elmhurst, Queens, New York. Furthermore, the plaintiff had at the time of all events referenced to herein has resided within the jurisdiction of this Court either in Brooklyn or Queens.

## Cause of Action

This case areise as the result of the gross and deliberate infrengments upon the plaintiff's 1st, 8th, and 14th Amendments rights as proscribed by the United States Constitution.

Specifically, in 2003, the plaintiff was arrested in Brooklyn for allegedly being in possession of a controlled substance and was thereafter released on his own recognizance. The plaintiff failed to attend a treatment program and a warrent was issued for his arrest. On December 2, 2003, the plaintiff was returned on that warrant and taken before the Criminal Court located at 120 Schimerhorn Street, Brooklyn, New York where he was remanded to the custody of the New York City Department of Corrections and taken to Rikers Island.

On December 5, 2003, the plaintiff again appeared before the court, bacuse tyhe People of the State of New York were not ready to proceed and did not hav a lab report, the plaintiff was release on his own recognizance. However, the plaintiff also had an immigration hold (warrant) lodged against him of which the New York City Department of Corrections was aware since, at the time the plaintiff was remanded on December 2, 2003 that warrant was submitted to the New York City Department of Corrections by the officers of the New York City Police Department warrant squad. The plaintiff wishes to make the court aware that this warrant was lodged under the name Cecil Harvey so the NYC DOC as a result of the New York State Identification or NYSID which linked both names to this plaintiff.

Having been granted release on his own recognizance, the NYC Dept. of Corrections was then obligated to notify the Immigration and Customs Enforcement immediately so that they could then take custody of the plaintiff or elect to forego custody at which juncture the plaintiff wouyld have then been released from custody. The plainfiff estimates that providing for the 72 hour limitation of time for ICE to take him into custody without a request to the court for an extension of time that at best the plaintiff should have remained in the custody of the NYC Department of Corrections for no more than 5 days at the most.

The plaintiff asserts that the Department of Correction and the Warden of O.B.C.C. never acted upon the Court order and never notified the ICE that they could take custody of the plaintiff.

Subsequently, the plaintiff was transferred from O.B.C.C. to N.I.C. The Warden of N.I.C. never notified the I.C.E. of the fact that the plaintiff was available to be taken into custo_custody and the plaintiff remained detained at that facility for about 28 days when the NYC Dept. of Corrections had no legal authority to detain the plaintiff. Thus the plaintiff asserts that he was falsely imprisioned by the New York City Department of Corrections.

This illegal inferngment upon the plaintiff's constitutional right to liberty did not end there but the plaintiff was subsequently transferred to C.M.D.C. C-73 where he remained illegally in the custody of the NYC Dept. of Corrections from January 2, 2004 to January 13, 2004 when he was finally transferred to the custody of the ICE and taken to their processing center at 201 varick Street.

This should have been the end of the matter and would have been had the plaintiff been physically deported from the United States but as God would have it this did not happen. After 2years and 3 months in the custody of the ICE the plaintiff was released upon supervision. There was a warrant check conducted but the State of New York elected not to take custody of the plaintiff.

However, unbeknown to the plaintiff, the State of New York had issued a bench warrant against him because on January 13, 2004, the plaintiff had failed to appear before the court. This was a direct result of the actions of the NYC Dept. of Corrections deliberately transferring the plaintiff to the custody of ICE On January 13, 2004 and then deliberatley withholding thidis information from the Criminal Court.

Subsequently, as a result of this warrant, the plaintiff is currently in thge custody of the NYC Dept. of Corrections as a result of the easrlier actions in 2004.

The plaintiff asserets that his current detention is an infrengment upon his first Amendment right to liberty and his right to eaqual protection and due process of the law as proscribed by the United States Constitution. The plaintiff asserts that his failure to appear before the court on January 13, 2004 was due to circumstances beyond his control since he was first in the custody of the NYC Department of corrections whose movement office knew of the court date but which the Department of Corrections elecetd of its own accord to instead transfer custody of the plaintiff to ICE.

The plaintiff asserts that he is currently being forced to accept a plea agreement which would prejudice his rights by subjecting the plaintiff to new innigration consequences. The plaintiff asserts that as a proximate result of these violations of his constitutional liberties that he has suffered greatly and that he should be awarded both punative and actual damages for the pain and suffering and mental anguish these violations has subjected him to.

The plaintiff asserts that there is sufficient evedince to conclusively show that when the NYC Department of Corrections realized that they did not afford this plaintiff his constitutional right to due process of law by failing to notify the ICE that they could take custody of the plaintiff, that the NYC Dept. of Corrections herein after referred to as the defendant, then on January 13, 2004 the plaintiff's court date deliberately and in violation of all of the rights of an accused had ICE take custody of the plaintiff in an attempt to coverup their errors and professional misconduct.

On September 2nd, 2006, the plaintiff was arrested by the New York City Police Department on claims that there was an outstanding warrant for the plaintiff's arrest issued by the Criminal Court at Kings County on or about February 13, 2004 because the plaintiff had in the view of the Court deliberately violated the terms of his grant of liberty in the form of release on his own recognizance. The plaintiff was brought before the court and attempted to try to explain that he was in no way at fault for his failure to appear in court on January 13, 2004 because the NYC Dept. of Corrections sitll had physical custody of the plaintiff

and had at ta

at that time and never relinquished that custody on till the morning of January 13, 2004 when the plaintiff's custody was then transferred to the United States Department of Homeland Security's Immigration & Customs Enforcement (ICE).

The plaintiff contends that from September 2nd, 2006 to the present, that he has been held in custody of the NYC Dept. of Corrections and that as a result of not being able to secure his release through a bail bondsman as a proximate result of the bench warrant because the plaintiff was considered a flight risk, the ICE subsequently lodged a detainer against the plaintiff when he failed to report as contained in the provisions contained in the regulations governing the grant of supervised release upon which the ICE had on March16, 2006 released the plaintiff from indefinite detention.

The Plaintiff asserts that the deliberately acts of the NYC Department on January 13, 2004 has now subjected him once again to violations of his constitutional liberties such as his 1st Amendment right to liberty, and his right to be free from cruel and unusual punishment without due process of law in violation of the 14th Amendment to the United States Constitution.

## What the Plaintiff Requires of the Court

The plaintifff asserts that the Defendants in this matter are liable for actual as well as punative damages for these constitutional violations to which the plaintiff has been subjeceted to. The plaintiff contends that since being relese from the ICE on March 16, 2006, that he started a buisiness and that as a result of being locked up as a result of the actions of the NYC Dept., that he has lost substantial revenue. The plaintiff contends that since being released from the custody of the ICE that he enrolled in an on line college for which he secured his tuition as a result of obtaining a student loan from City Bank under the premise that the would become due if the plaintiff stop attending school. Also since being released from ICE on March 16. 2006, the plaintiff restructured a student loan which had been in default and also agreed that this loan would become due if the plaintiff stop attending school. The total value of these two loans combinedis approximately 12,000-14,000. The plaintiff asserts that the NYC Dept. of Corrections is liable for settlement of these loans. The plaintiff estimates that the lost of

revenue to Harvey's Immigration Assistance Project, Inc., the company which he owns with his wife Wendy Odle-Harvey is estimated at approximately $45,000.00- $55,000.00, based upon the average based prices for thgis type of work. The plaintiff estimates the lost of revenue from cases which he was working on at the time of his illegal arrest as a result of the deliberately actions of the NYC Department of Corrections to be approximately $15, 000.00 based upon the average rate.

The plaintiff asserts that in accordance with NYC DOC regulations that he is entitled to compensation of $500.00 per day for each day that the plaintiff has been illegally imprisioned in violation of the United States Constitution from December 5, 2003- January 13, 2004 and from September 2nd, 2006 to the date from which this plaintiff is finally released from the Rikers Island Correction Center. The total of this will be calculated at the time of the plaintiff's release. These will be the sum of the actual damages for which the NYC Department of Corrcetions are liable as a result of their deliberate actions to violate the plaintiff's constitutional liberties.

As to the punative damages, the plaintiff asserts that the NYC Dept. of Corrections has deprived him of what little time he may have had to spend with his family before his immigration case which is currently pending a decision from the panel of Judges hearing it is issued. On November 15th, 2006 that panal reviewed the petitioner's immigration case and a decision should be issued shortly which means that the plaintiff who had been in the custody of the ICE from January 13, 2004 to March 16, 2006 a period of over two years could potentially lose over three months more time which he could have been spent with his wife, children and grand children. If the plaintiff is ordered deported from the United States. The plaintiff asserts that the special times such as Thanksgiving, birthdays and other special occasions which this illegal imprisonment has caused him to miss are times that never will be recaptures and memories which he will never have. Moreover, for the pass several months since being illegally arrested, the plaintiff who has formed a special bond with his three grand sons especially his youngest who called him da, da has had to listen each time he called to speak to them, their cries because he is not there. The plaintiff has been denied the pleasure he has known from sleeping with his youngest grand beside him because that is where the child preferred to sleep as oppose to in his crib.

T

The plaintiff asserts that the scope of medical care that he has had to accept is less than that which now forms the basis for a civil suit against the ICE and their agants. The plaintiff asserts that he has been strip searched, in violation of his right to be free from unreasonable searches and that he has been denied the opportunity to have in his possession items which any ordinary citizen or legal resident of the United States not under criminal detention is entitled to possess. The plaintiff asserts that he should be compensated in the sum of $500.000.00 for these violations and $500.000.00 for pain and suffering.

In closing the plaintiff asks that the request made herein be granted in the interest of justice.

Respectfully submitted

*[signature]*
*a.k.a. [signature]*
Cecil O. Harvey a.k.a.
~~Cecil O. Harvey~~, Pro-se
*David Grant*

Dated: November 24, 2006

CITY OF NEW YORK OFFICE OF
The Comptroller
Cecil O. Harvey a.k.a.
David Grant

V.

New York City Department of
Corrections; NYC Poilice
Department,People of the
City of New York

NOTICE OF CLAIM

## STATEMENT OF FACTS

The plaintiff is curtrently being held by the Defendants in violation of his First Amendment Right to Liberty.

The warrant of arrest was illegal and the Plaitiff was illegally arrested by the New York City Police Department.

The New York City Department of Corrections violated the Plaintiff's constitutional right to equal protection and due process of law in that the Department illegally and without authirization trurned the Plaintiff over to the Immigration & Customs Enforcement Bureau on January 13, 2004, the date the Plaintiff was to appear in court to answer charges. The result of this action is that the Plaintiff was not produce and thus a warrant of arrest was issued which now causes the Plaintiff to be subject to hids present detention illegally.

The People of the City of New York waived Prosecution in allowing the Plaintiff to be turned over to ICE on january 13, 2004 and thus the case should be dismissed due to a waiver of prosecution.

## Relief Sought

For denial of his right to liberty the Plaintiff seeks compensation in the amount of $100,000.00.
For Illegal arrest $ 100.000.00; Illegal detention $100,000.00; Lost of income $250,000.00; Causing breach of obligation to Plaintiff's client which could subject plaintiff to civil action $500,000.00 plus any liability that results from platntiff's inabbility to meet his obligations to his clients.

Cecil O. Harvey a.k.a
David Grant, Plaintiff

Dated:   September 8, 2006

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS: TRIAL PART 2

---------------------------------------------

THE PEOPLE OF THE STATE OF NEW YORK,

-vs-

DAVID GRANT,

        Defendant.

---------------------------------------------

DECISION AND ORDER

Docket: 2003KN031763

William McGuire, J.:

Defendant David Grant moves for leave to reargue this court's October 26, 2006 decision denying his *pro se* motion to dismiss the accusatory instrument pursuant to CPL 170.30 (1) (e), CPL 30.30 (1) (b) and CPL 30.20 to dismiss the accusatory instrument on speedy trial grounds. In that discussion, the court found that 25 days were chargeable to the People. Upon reargument, he again seeks an order dismissing the accusatory instrument pursuant to CPL 170, CPL 30.30, and CPL 30.20. Defendant is charged with one count of the class A misdemeanor of Criminal Possession of a Controlled Substance in the Seventh Degree (PL 220.03). The People oppose the motion.

The court grants leave to reargue the earlier motion.

Defendant focuses his argument on the period from January 13, 2004 to March 16, 2006. He asserts that on January 13, 2004, federal agents from the U.S. Department of Homeland Security picked him up from Riker's Island. Thus, he contends that knowledge of his continuous confinement must be imputed to the District Attorney and that the time is chargeable to the People.

The People maintain that neither the District Attorney's Office nor the New York City Police Department knew that defendant was in Federal custody during the pendency of the case.

As the top offense charged here is a Class A misdemeanor punishable by a sentence of up to one year, the People were required to be ready within 90 days of the commencement of this case (CPL 30.30 [1] [b]). Initially, the defense meets his or her initial burden on a speedy trial motion simply by alleging that the People failed to declare readiness within the statutorily prescribed time period (*People v Goode*, 87 NY2d 1045 [1996]; *People v Luperon*, 85 NY2d 71 [1995]) Once the motion has been made, the People's response must argue that certain time periods are excludable (*id.*). The burden then shifts back to the defense to demonstrate what time is, in fact, chargeable (*id.*).

Knowledge of defendant's whereabouts by local law enforcement authorities is imputed to the District Attorney's Office (see *People v McLaurin*, 38 NY2d 123, 126 [1975]). Furthermore, where delay is occasioned by defendant's incarceration under jurisdiction of the federal government or another state, said delay is not justified when the police or law enforcement authorities have knowledge of defendant's whereabouts (*id.*).

The records retained by the New York City Department of Corrections were received by the court on December 8, 2006. Those records reflect that defendant was housed at GMDC on Rikers Island until he was discharged on January 13, 2004 to the Federal authorities. The New York City Department of Corrections is a City agency. A defendant ought not be penalized because of any inadequacy of internal communication within the law enforcement establishment (see *People v McLaurin*, 38 NY2d 123 [1975], *supra.*; see *People v Hinton*, 181 AD2d 696 [2d Dept. 1992]; see also *People v Jones*, 105 AD2d 1984 [2d Dept. 1984]). Here, knowledge by local law enforcement authorities at Rikers is imputed to the People (see *People v Matin*, 12 Misc3d 1174 [Crim Ct Kings Co. 2006] [knowledge by police that defendant was in federal custody must be imputed to the People], citing to *People v Mapp*, 308 AD2d 463 [2d Dept. 2003]).

In addition, where, as appears to be the case here, the people fail to utilize the statutory procedures set forth for securing the presence of a defendant detained in Federal custody (see CPL 580.30), courts have held the delay to be includable (*People v Scott*, 242 AD2d 478 [1st Dept.], lv den 91 NY2d 836 [1997]; *People v Cropper*, 202 AD2d 603 [2d Dept.], lv den 84 NY2d 824 [1994]). The obligation to employ the statutorily described methods will not be excused unless the People have been "unequivocally advised" that the defendant would not be released prior to trial and/or sentencing (see *People v Scott*, 242 AD2d 478 at 479 [1st Dept.], lv den 91 NY2d 836 [1997], *supra.*). Even then, there must be a showing that the People, after being so advised, continued to make reasonable efforts to obtain defendant's presence (see *People v Gonzalez*, 235 AD2d 366 [1st Dept.], lv den 89 NY2d 1093 [1997]; *People v Delacruz*, 184 Misc2d 653 [Sup. Ct. N.Y. Co. 2000]). The People here have not made such a due diligence showing.

Given all of the above reasons, the period from January 13, 2004 to March 16, 2006, a period of time well in excess of 90 days, is charged to the People. Accordingly, defendant's motion to dismiss is granted.

The foregoing constitutes the decision and order of the court.

Dated: December 12, 2006
Brooklyn, New York

WILLIAM L. McGUIRE
J.C.C.